IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| KAREN MICHELLE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:13-CV-59 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Karen Michelle Jones ("Jones") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Jones alleges that the Administrative Law Judge ("ALJ") erred by finding that her Crohn's disease was not a severe impairment and by improperly discrediting her testimony. I conclude that substantial evidence supports the ALJ's decision on both grounds. Accordingly, I **RECOMMEND DENYING** Jones' Motion for Summary Judgment (Dkt. No. 11), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 13.

**STANDARD OF REVIEW**

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Jones failed to demonstrate that she was disabled under the Act.[1] "Substantial evidence is such relevant evidence as a reasonable mind might

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted

1

accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Jones filed for DIB on October 8, 2010, claiming that her disability began on April 1, 1991. R. 123. Jones is insured through September 30, 1996; thus, she must show that her disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. § 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 65–69, 71–73. On July 26, 2012, ALJ Brian B. Rippel held a hearing to consider Jones's disability claim. R. 21–50. Jones was represented by an attorney at the hearing, which included testimony from Jones and vocational expert Barry Steven Hensley. R. 22–50.

On August 13, 2012, the ALJ entered his decision analyzing Jones's claim under the familiar five-step process[2] and denying her claims for benefits. R. 12–18. The ALJ found that

---

or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Jones suffered from Crohn's disease, but that it was not a severe impairment because it did not significantly limit her ability to perform basic work activities. R. 14–15. Thus, the ALJ concluded that she was not disabled. R. 17. Jones appealed the ALJ's decision to the Appeals Council and submitted additional medical records, which the Appeals Council made a part of the record. R. 4. On October 28, 2013, the Appeals Council denied Jones's request for review (R. 1–4), and this appeal followed.

## ANALYSIS

Jones asserts that the ALJ erred by finding her Crohn's disease to be a non-severe impairment, and by improperly discrediting her testimony. Jones argues in the alternative that this case should be remanded to the Commissioner under 42 U.S.C. § 405(g) for consideration of additional evidence submitted to the Appeals Council.

### Severe Impairment and Credibility

Jones must prove that she had a severe impairment on or before September 30, 1996 to qualify for DIB benefits. Jones acknowledges that the record contains few medical records dated prior to September 30, 1996. However, Jones argues that the ALJ should have found that her Crohn's disease was a severe impairment based upon her testimony and the affidavits she submitted from witnesses. At base, Jones's arguments are essentially an invitation to reweigh the evidence of record. Jones does not point to any evidence the ALJ failed to consider, does not identify any legal standard the ALJ misapplied, and does not put forward any legal duty the ALJ failed to fulfill. The duty of this court is to review the record as a whole to determine if substantial evidence exists to support the ALJ's conclusion. I find that there is.

The medical records submitted to the ALJ reflect that Jones was first diagnosed with Crohn's disease in August 1996, one month before her insured status expired. On August 2, 1996, Jones visited her family physician, Robert B. Laibstain, M.D., with complaints of right

3

lower quadrant pain. R. 214. Jones reported that she vomited the weekend before, and did not have an appetite. R. 214. On August 7, 1996, Jones was admitted to Chesapeake General Hospital reporting intermittent pain in her right lower quadrant over the past several weeks. R. 261. A CT scan of Jones's abdomen revealed a thickened terminal ileum, right colon and ascending colon. R. 261. Jones reported that she had an episode of "colitis" with constant diarrhea years earlier, after the birth of her son. Jones stated that she was currently having loose bowel movements, which were the first diarrhea stools that she had experienced. R. 262. Jones was diagnosed with inflammatory bowel disease and possible Crohn's disease. R. 264.

Jones visited Gastroenterology Associates of Tidewater ("GAT") on August 28, 1996, and was doing "very well." R. 202. Jones noted a very dry mouth and raspy voice from medication, as well as a knot in her right lower quadrant with cramping and gas pains the night before. Jones stated that her bowel movements were generally formed and normal, but she had two loose stools that day. R. 202. The physician's impression was Crohn's disease of the right colon and ileocecal region. R. 202. Jones called GAT three times in September to report intermittent chest discomfort (R. 203), spotty bleeding (R. 203) and a low grade fever (R. 204).

On October 2, 1996, after her date last insured, Jones presented to Chesapeake General Hospital and was diagnosed with a flare up of her Crohn's disease. She was prescribed a full liquid diet along with medications. R. 205. On October 28, 1996, Jones met with Norman Goldin, M.D., for a second opinion of her Crohn's diagnosis. R. 290. Jones reported that her symptoms had improved. R. 290. She reported some intermittent pain with urination, and recurrence of right lower quadrant pain when she tapered her dose of Prednisone. R. 290. She stated that she was presently asymptomatic and had bowel movements every two or three days. R. 290. Dr. Goldin found that Jones had received appropriate care for her Crohn's disease, and instructed her to add multivitamins and folic acid to her diet, and to attempt to taper her dosage

4

of Prednisone. R. 291. Jones's medical records reflect that her Crohn's disease continued to be asymptomatic while on proper medication from December 1996 through January 1998. R.287–91.[3] Two state agency physicians reviewed Jones's records and determined that her Crohn's disease was not a severe disabling medical impairment prior to September 30, 1996. R. 54, 61.

Jones testified at the administrative hearing that she began having constant diarrhea in 1991 and visited a specialist for fatigue and diarrhea at that time. R. 31. She was officially diagnosed with Crohn's disease in 1996, and testified that from 1991 through 1996 she was very tired and would lie down most of the day. R. 32. Jones testified that during those five years she had diarrhea 10–12 times a day, general achiness, and pain in her lower right side. R. 33, 40. Jones also provided letters to the ALJ from friends who witnessed her symptoms of Crohn's disease from 1994 to 1997. R. 189, 192, 194. These letters document that Jones was have "bad" days when she was tired and felt sick, that she complained of pain from bowel movements. R. 189, 192, 194.

The ALJ reviewed the evidence set forth above and determined that Jones's Crohn's disease was a non-severe impairment. R. 14–17. An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. § 404.1521(a). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Jones bears the burden of proving that her impairment was severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v.

---

[3] The administrative record contains medical treatment notes through 2012; however, because this case focuses on whether Jones suffered from a severe impairment on or before September 30, 1996, I will not examine those records in detail in this opinion.

Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984).

The ALJ acknowledged that Jones suffered from Crohn's disease prior to her date last insured, but found that it "did not cause more than a minimal limitation in her ability to perform basic work activity, and was therefore not severe, particularly in light of the fact that she reported having normal bowel movements and there were no complaints until August 1996, the month before her date last insured." R. 17. Substantial evidence supports the ALJ's conclusion. Diagnosis of an underlying medical condition prior to the date last insured is insufficient if the symptoms or other manifestations are not disabling until after the insured status has ended. See Gross v. Heckler, 765 F.2d 1163, 1166 (4th Cir. 1986). Here, not only did Jones lack disabling manifestations of her Crohn's disease before September 30, 1996, but records for over a year after that date reflect that she was asymptomatic. R. 287–91. Further, Jones reported in August 1996 that she was having her "first" diarrhea stools and that she had a prior bout of colitis several years before. R. 261–62. These statements lead to the conclusion that Jones was only recently having a recurrence of those symptoms. The records further reflect that although Jones's Crohn's disease caused significant symptoms in August 1996, it was being managed by medication two months later. R. 290. The medical evidence supports the ALJ's conclusion that Jones's Crohn's disease did not rise to the level of a severe impairment on or before her date last insured.

Jones argues that the ALJ improperly analyzed the credibility of her statements concerning the severity of her symptoms. Specifically, Jones asserts that the ALJ did not consider the entire case record and his decision was not adequately specific to make clear to subsequent reviewers the weight he gave to plaintiff's statements and the reason for that weight. Pl. Br. Summ. J. p. 30. When considering Jones's testimony, the ALJ found that Jones's

6

medically determinable impairment could have been reasonably expected to produce some of the alleged symptoms; however, he found that the statements of Jones and her friends concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with finding that Jones has no severe impairment or combination of impairments. R. 17. The ALJ specifically noted that Jones's allegations regarding the frequency and continuity of her symptoms were contradicted by the medical evidence. R. 17. The ALJ further noted that although the record reflects that Jones's Crohn's disease progressed after her date last insured, there is no medical evidence supporting Jones's alleged frequency and duration of exacerbations prior to September 30, 1996. R. 17. I find that substantial evidence supports the ALJ's credibility analysis.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Jones's subjective complaints of disabling symptoms are not conclusive. Rather, the ALJ must examine all of the evidence, including the objective medical record, and determine whether Jones met her burden of proving that she suffers from an underlying impairment which is reasonably expected to produce her claimed symptoms alleged. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). This assessment requires the ALJ to evaluate the intensity and persistence of Jones's claimed symptoms and the affect those disabling conditions have on Jones's ability to work. Id. at 594–95. A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

Jones's complaint that the ALJ's credibility determination was not adequately thorough or specific is unavailing. It is apparent from his decision that the ALJ reviewed with some detail the medical record regarding Jones's physical impairments, and measured her credibility against the objective medical evidence. R. 17–19. The ALJ explained that the medical record did not support the presence of symptoms as severe as Jones alleged prior to her date last insured, a conclusion that is well supported by the record as set forth above. Jones does not identify any treatment record not considered by the ALJ which documents severe symptoms resulting from her Crohn's disease prior to her date last insured.

Further, the statements Jones submitted to the ALJ from friends documenting her symptoms describe moderate, intermittent symptoms of Crohn's disease. For example, Jane Ellsworth wrote that "[Jones] would be ok and then [Jones] would start having days when [she] felt so bad [she] would have to stay in bed a lot," and "it would come and go and I remember [Jones] mentioned it may have just been symptoms from normal female cycle." R. 189. Likewise, Sherie O'Donnell wrote that "there were times that [Jones] would become extremely fatigued." R. 192. Finally, Tina Smellie's letter addresses Jones's condition during the summer of 1996, when the medical records document that Jones suffered a flare up of her Crohn's disease. R. 194. These statements reflect that Jones's symptoms were intermittent at best, and simply do not establish that Jones suffered the type of consistent severe symptoms she alleges in her testimony.

The evidentiary inconsistencies between Jones's statements about her symptoms and the medical records, as well as the medical source opinions from state agency doctors provide sufficient support for the ALJ's finding that Jones's testimony was not fully credible. The ALJ's use of standard language in his analysis of Jones's credibility does not render invalid his

otherwise valid analysis because the ALJ provided adequate reasoning for his decision.[4] Where substantial evidence supports the ALJ's credibility analysis, and the ALJ adequately explains his conclusion, the ALJ's decision must be affirmed. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The ALJ found Jones's complaints of completely disabling symptoms partially credible because of conflicts between her statements and the medical record. I find that ample evidence supports this credibility analysis, and because the issue of credibility is entrusted to the ALJ, I decline to disturb his decision on this ground.

**Additional Evidence**

Jones also asks, in the alternative, that the court remand her claim on the basis of new evidence submitted to the Appeals Council. Pl. Br. Summ J. p. 31. Jones submitted records dated August 6 through 9, 1996. R. 442–50. These records are merely additional documentation reflecting that Jones was hospitalized on August 6, 1996 and diagnosed with Crohn's disease shortly thereafter.

When deciding whether to grant review, the Appeals Council must consider additional evidence, "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is new if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome. Id.

---

[4] Recent cases from districts in the Fourth Circuit have recognized that the use of boilerplate language is acceptable "where the ALJ explains his conclusions adequately." Jones v. Colvin, 5:12-CV-00567-FL, 2013 WL 5460197, at *15 (E.D.N.C. Sept. 30, 2013); see also Mascio v. Colvin, No. 2:11–CV–65–FL, 2013 WL 3321577, at *3 (E.D.N.C. July 1, 2013). "Inclusion of what was in effect credibility boilerplate in an otherwise valid decision does not render the decision in [a]… case fatally defective." Martin v. Colvin, 5:12CV00066, 2013 WL 4451230, at *7 (W.D. Va. Aug. 16, 2013).

9

When the Appeals Council denied Jones's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. As such, this Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings. <u>Wilkins v. Sec'y, Dep't of Health and Human Servs.</u>, 953 F.2d 93, 96 (4th Cir. 1991.) "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." <u>Davis v. Barnhart</u>, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005)(citing <u>Smith v. Chater</u>, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under <u>Wilkins</u> to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under <u>Smith</u> to abstain from making credibility determinations and resolving factual conflicts. <u>Davis</u>, 392 F. Supp. 2d at 751.

Here, the additional medical records provide no basis to remand this case because they are duplicative of evidence that was already in the record before the ALJ. The records do not add any new information, and there is no reasonable possibility that consideration of these records would change the outcome of the ALJ's decision. Accordingly, there is no basis upon which to remand this case under 42 U.S.C. § 405(g).

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of

record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: February 10, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

11

Case 6:13-cv-00059-NKM-RSB   Document 18   Filed 02/10/15   Page 11 of 11   Pageid#: 542